IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN BURKS<br>2871 North Constitution Road<br>Camden, NJ 08104<br><br>        Plaintiff,<br><br>  v.<br><br>PENNSAUKEN PACKING COMPANY,<br>LLC d/b/a LIDESTRI FOOD AND<br>BEVERAGE<br>1550 John Tipton Blvd.<br>Pennsauken, NJ 08110<br>    and<br>LIDESTRI FOODS, INC.<br>815 West Whitney Road<br>Fairport, NY 14450<br><br>        Defendants. | **CIVIL ACTION**<br><br>No.<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Kevin Burks (*hereinafter* referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Pennsauken Packing company, LLC d/b/a LiDestri Food and Beverage and LiDestri Foods, Inc. (*hereinafter* collectively "Defendants") of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the New Jersey Law Against Discrimination ("NJ LAD"), and other state common law claim(s). As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under federal law. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Pennsauken Packing Company, LLC *d/b/a* LiDestri Food and Beverage is a beverage co-packing company, with a location as set forth at the above-captioned address.

9. Upon information and belief, LiDestri Foods, Inc. is the parent corporation of Pennsauken Packing Company, LLC d/b/a LiDestri Food and Beverage, with headquarters at the above-captioned address.

10. Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. In or about August of 2020, Plaintiff was placed to work within Defendants by a staffing agency as a machine operator at Defendants' 1550 John Tipton Blvd., Pennsauken, New Jersey facility.

14. Plaintiff was hired directly by Defendants as a full-time employee in or about March of 2021.

15. Plaintiff was directly supervised by Production Shift Manager, Bob Danser (*hereinafter* "Danser").

16. Throughout his tenure with Defendants, Plaintiff was a hard-working employee who performed his job well.

17. In or about May of 2021, Plaintiff sustained multiple work-related injuries to his right hand/wrist (for which he is still treating, including physical therapy).

18. Plaintiff suffered his first work-related injury (falling over a stool) on or about May 8, 2021, after which Plaintiff continued to work his shift but the pain in his hand/wrist gradually increased following his shift and throughout the evening. As a result, the following day (his day off), Plaintiff went to the Emergency Room, wherein he was given x-rays, provided with a splint to wear on his right wrist/hand, and returned to work full-duty.

19. Plaintiff was not immediately aware of the extent of his injuries from the aforesaid work-related injury, and he continued to work full-duty for the next several weeks, noticeably favoring his right wrist/hand and wearing the aforesaid splint.

20. Shortly thereafter, Plaintiff reinjured his wrist/hand putting a labeler reel inside a machine at work, and he filed for worker's compensation benefits from Defendants.

21. As a result of his aforesaid work-related injuries/health conditions, Plaintiff was limited in his ability (at times) to perform some daily life activities, including but not limited to lifting, pushing, grasping, and working (among other daily life activities).

22. Despite his aforementioned work-related injuries/health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

23. For example, following the filing of worker's compensation benefits, Defendants' management referred Plaintiff to Defendants' worker's compensation physicians at Worknet, who recommended that Plaintiff perform light-duty work of no lifting, pushing, or grasping over 20 pounds with his right hand.

24. Following his work-related injuries, however, Plaintiff experienced blatant discrimination and retaliation from Defendants' management as follows:

4

a. There was initial reluctance to characterize Plaintiff's injuries as worker's compensation, with Danser hostilely denying that his injuries were work-related, despite the fact that at least one co-worker had witnessed Plaintiff's initial fall over the stool onto his wrist/hand;

b. Management exhibited clear frustration with Plaintiff needing various appointments scheduled or limited time off for medical reasons post-injury; and

c. While Defendants' management accommodated Plaintiff with light-duty work of no lifting, pushing, and grasping over 20 lbs., they appeared annoyed at having to provide Plaintiff with assistance to move heavier objects.

25. Plaintiff observed/was subjected to the aforesaid instances of hostility and animosity until he was abruptly terminated on or about June 1, 2021, ***mere weeks*** after sustaining and/or notifying Defendants' management of his work-related injuries/serious health conditions.

26. Moreover, Plaintiff was terminated for completely pretextual reasons ***only after*** informing Defendants' management his doctor recommended he continue with the aforesaid restrictions until his next evaluation.

27. Defendants' purported rationale for Plaintiff's termination was that he was allegedly sleeping while waiting for a production line to come back on after it went down.

28. In actuality, Plaintiff and several other employees were sitting on boxes and waiting for the line to come back up that day; it was readily apparent to all those around Plaintiff that he was not sleeping (including at least one co-worker he spoke to that day); and even members of management routinely sat on the boxes next to the machines they were operating during down lines but were not disciplined and/or terminated for same.

29. Plaintiff believes and therefore avers that he was subjected to a hostile work environment because of: (1) his known and/or perceived health problems; (2) his record of

impairment; and (3) in retaliation for his requested accommodations through demeaning, discriminatory, and disparate treatment toward him.

30. Plaintiff believes and therefore avers that he was really terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; and (4) Defendants' failure to properly accommodate him.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**
**-Against Both Defendants-**

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities including, but not limited to lifting, pushing, grasping, and working (among other daily life activities).

33. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

34. Plaintiff required reasonable accommodations from Defendants, including but not limited to intermittent time off to care for and to treat for his serious health conditions, the ability to wear a wrist/hand splint, and light-duty work of no lifting, pushing, and grasping over 20 pounds.

35. On or about June 1, 2021, in close proximity to his most recent requested accommodations (set forth *supra*), Plaintiff was abruptly terminated from his employment with Defendants.

36. Upon Plaintiff's information and belief, Defendants failed to accommodate him by considering his requests for continued light duty and/or need for intermittent time off to care for and treat his aforesaid health conditions in making the decision to terminate him.

37. Plaintiff believes and therefore avers that he was subjected to a hostile work environment because of: (1) his known and/or perceived health problems; (2) his record of impairment; and (3) in retaliation for his requested accommodations through demeaning, discriminatory, and disparate treatment toward him.

38. Plaintiff believes and therefore avers that he was really terminated because of (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; and (4) Defendants' failure to properly accommodate him.

39. These actions aforesaid constitute violations of the ADA.

## COUNT II
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment; and [4] Failure to Accommodate)**
-Against Both Defendants-

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff reasserts each and every allegation from Count I, as such actions in this case constitute identical violations of the NJ LAD.

## COUNT III
**Common-Law Wrongful Discharge**
**(Public Policy Violation)**
-Against Both Defendants-

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Upon information and belief, Plaintiff was terminated in substantial part for making a claim for worker's compensation benefits against Defendants and/or for his work-related injuries.

44. It is against New Jersey's public policy for an employee to be terminated for making a worker's compensation claim. *Stewart v. County of Hudson*, 2011 N.J. Super. Unpub. LEXIS 1965, 34 (App. Div. July 22, 2011).

45. The mere temporal proximity between Plaintiff's claim for worker's compensation and his termination creates an inference that his termination was in retaliation for making such a claim.

46. Additionally, the hostility and animosity that he was subjected to after he sustained a work-related injury and/or made a workers' compensation claim creates an inference that his termination was in retaliation for making such a claim.

47. These actions as aforesaid constitute wrongful termination in New Jersey.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

  F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

          Respectfully submitted,

          **KARPF, KARPF & CERUTTI, P.C.**

    By: _____
          Ari R. Karpf, Esq.
          3331 Street Road
          Two Greenwood Square, Suite 128
          Bensalem, PA 19020
          (215) 639-0801

Dated: September 27, 2021